ASSETS INV. CO. v. HOLLINGSHEAD et al.

(Circuit Court of Appeals, Eighth Circuit.  October 28, 1912.)

No. 3,681.

EASEMENTS (§ 15*)—TERMINATION—ABROGATION OF CONTRACT.

A dry goods company, desiring to enlarge its facilities by acquiring the use of the entire block, organized a realty company, of which it owned all the stock, and which acquired a long-term ground lease of adjoining lots and commenced the erection of a building thereon, subleasing the same to the dry goods company.  In the basement of this building it installed a heating and power plant, connected by pipes with the other buildings in the block, and other facilities for use of the dry goods company.  The latter company became insolvent, and its receivers, by order of the court, caused the realty company's property to be sold to defendant; the terms prescribed by the order requiring the release of the dry goods company from all obligations growing out of the venture, including the cancellation of the sublease.  Thereafter the receivers paid rent to defendant for the use of the basement facilities until the sale of the remaining property to complainant.  *Held* that, it having been the evident intention of the court to sever the two properties entirely, no license or easement in defendant's property remained in favor of the property afterward sold to complainant.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 42–58; Dec. Dig. § 15.*]

Appeal from the Circuit Court of the United States for the Western District of Missouri; Smith McPherson, Judge.

Suit in equity by the Assets Investment Company against J. P. Hollingshead and others.  Decree for defendants, and complainant appeals.  Affirmed.

William F. Woodruff, of Kansas City, Mo. (Brumback & Woodruff, of Kansas City, Mo., on the brief), for appellant.

John F. Philips, of Kansas City, Mo. (A. F. Evans, of Kansas City, Mo., on the brief), for appellee Kentucky Realty Investment Company.

Before SANBORN and HOOK, Circuit Judges, and WILLARD, District Judge.

HOOK, Circuit Judge.  This is a controversy between the Assets Investment Company and the Kentucky Realty Investment Company, owners of adjoining estates, over claims by the former of license and easement in the property of the latter.  It comes here on appeal from an order dissolving a temporary injunction and determining the merits against the Assets Company.  Briefly, but sufficiently, stated, the relations between the parties arose in this way:

The Jones Dry Goods Company, desiring to enlarge its facilities, caused two subsidiary corporations to be organized and to acquire long-term ground leases of lots needed to make its holdings embrace an entire block in the business district of Kansas City, Mo.  One of these corporations was the Benton Building & Investment Company, with a capital stock of $300,000, all of which was owned by the Dry Goods Company.  The leaseholds acquired by the Benton Company

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

covered two lots and a fraction in the southeast corner of the block. It then sublet to the Dry Goods Company for a term of years at a substantial rental, and with a credit so reinforced it put upon the market an issue of mortgage bonds and contracted for the erection of a building. In the basement of the building, when completed and temporarily roofed, a heating and power plant was installed and connected by pipes and wires with the other buildings on the block. A toilet room for use of the employés of the Dry Goods Company was also established there. The use of these facilities is the subject of the present controversy. Before the building arose above the basement, it was found the Dry Goods Company was insolvent, and its property was put in the hands of receivers by the trial court. The construction operations of the Benton Company thereupon stopped, the greater part of its bonds could not be sold, the trustees in the mortgage claimed they had been deceived, the building contractors, with large quantities of materials on hand; refused to proceed, and the ground leases were in danger of being forfeited.

The receivers of the Dry Goods Company presented the situation to the court and asked its instructions. They represented that the sublease to the Dry Goods Company was a liability, not an asset. The court ordered the receivers, as the holders of the stock of the Benton Company, to cause it to sell its leasehold estates to the Kentucky Company, the present appellee, upon stated terms which would release the Dry Goods Company, the receivers, and the Benton Company from all obligations of every kind growing out of the venture. The sale was made and the conditions imposed upon it fully performed by the Kentucky Company. The instruments of transfer embraced all rights, privileges, and appurtenances of the leasehold estates, and all fixtures, machinery, and appliances on the premises. As specifically provided in the order, the sublease from the Benton Company to the Dry Goods Company was canceled. The receivers removed their property from the premises and arranged for the continued use of the facilities in the basement at a monthly rental. Some months later the Kentucky Company served notice to terminate the arrangement and the receivers obtained a temporary injunction. The claim of the receivers was rather vaguely stated as arising from the original intention of the former owners and the present necessity. They asserted a license as long as the Dry Goods Company's business was conducted in the rest of the block.

While the temporary injunction was in force, the remaining property in the hands of the receivers was sold to the Assets Investment Company, the appellant. It succeeded to the rights of the receivers under the injunction, and was authorized to apply at the foot of the decree confirming the sale for its protection. It filed what it termed an amended and supplemental bill, but which was in substance a dependent bill authorized by the decree of confirmation, and asserted an easement based on the original purpose as to the entire block, the physical connection by pipes, cables, and wires of the facilities in question with the buildings it purchased, and the existing necessity for their continued use. A motion of the Kentucky Company to dissolve the temporary

injunction was sustained, and by the same order the court decided the merits in its favor.

We need not spend time over the law of implied easements. If such a burden in respect of heat, power, etc., could be inferred from a mere sale of a part of an estate on which the mechanical appliances therefor had been installed and the physical connection with the part retained, a proposition which we do not consider, the inference here is expressly negatived by the conduct of the parties. We may also pass by the fact that it was the Benton Company's property which was sold, and the claim of easement comes through the Dry Goods Company, a stockholder. It is clear that it was the purpose of the court and the parties completely to divorce the property bought by the Kentucky Company from the balance of the block and to leave future relations to future contract. The receivers recognized this when they made the arrangement with the Kentucky Company at a monthly rental. It is urged that this act of the receivers was void, because not authorized by the court; but they had been expressly directed to continue the dry goods business of the insolvent concern, and the arrangement questioned was a necessary incident to the larger power conferred, as much so as the ordinary purchase of fuel, light, and water. Besides this, they laid it before the court in their petitions for injunction. By the sale to the Kentucky Company the unity of the block for business purposes and all interdependence between the part sold and that kept were intended to be severed. The original intention of the parties in this respect, about which much is said, found its efficient expression in the sublease of the Benton Company to the Dry Goods Company. But the receivers represented to the court that this sublease, with its obligations, was a liability of the Dry Goods Company, not an asset, and as an expressed part of the transaction authorized by the court the sublease was canceled. Having so escaped the burden, the Dry Goods Company and its successor in title cannot justly be awarded the advantage of an easement by implication.

Complaint is made by the Assets Company that the trial court determined the merits of its supplemental bill, so called, in sustaining the motion to dissolve the temporary injunction. If the bill was without equity, the result was right. A denial, or dissolution of a temporary injunction may involve and effectually dispose of the entire controversy. Harriman v. Northern Securities Co., 197 U. S. 244, 25 Sup. Ct. 493, 49 L. Ed. 739.

The decree is affirmed.